# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARVIN D. LESLIE, LAWRENCE D. CATTI, VALERIE J. FUNARI, CLYDE FREEMAN, JACOB CHERNOV, LING GONG, JILL A. ROACH, and ARTHUR S. GOLDSMITH individually and on behalf of all other similarly situated,<br><br>            Plaintiffs,<br><br>   v.<br><br>QUEST DIAGNOSTICS INCORPORATED,<br><br>         Defendant. | Civil Action No. 17-01590 (ES) (MAH)<br><br>*Document Electronically Filed*<br><br>Return Date: June 19, 2017<br><br><br><br>**ORAL ARGUMENT REQUESTED** |

---

## DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

---

Michael R. McDonald, Esq.
Joshua S. Levy, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone:  (973) 596-4500
Facsimile:  (973) 596-0545

Richard D. Raskin, Esq. (admitted *pro hac vice*)
Mark B. Blocker, Esq. (admitted *pro hac vice*)
Scott D. Stein, Esq. (admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

*Attorneys for Defendant*
*Quest Diagnostics Incorporated*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ....................................................................................................1

ALLEGATIONS OF THE COMPLAINT.............................................................3

ARGUMENT .........................................................................................................5

    I.     PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW. ...................5

        A.    Standard of Review.......................................................................5

        B.    Plaintiffs' Consumer Fraud Claims All Fail. ...............................6

             1.    Neither Differential Pricing Nor "High" Prices State A Claim. ......7

        C.    Plaintiffs Fail To Plead With Particularity Any Deceptive Conduct.........11

             1.    Plaintiffs Cannot Show QDI Concealed Its Use of Differential Pricing. ...................................................................12

             2.    Plaintiffs Do Not Allege QDI Concealed Material Facts On Its Invoices.....................................................................13

             3.    Plaintiffs Fail to Allege That These Non-Disclosures Caused Harm.................................................................................14

             4.    Plaintiffs' Allegations Are Not Pled With Particularity. ...............15

        D.    The Remainder of Plaintiffs' Claims Fail As A Matter of Law. ...............16

             1.    Count XIII:  The Fraud Claim Fails.............................................16

             2.    Count XI:  The Breach of Contract Claim Fails. ..........................17

             3.    Count XII:  The Unjust Enrichment Claim Fails. .........................20

    CONCLUSION.......................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgro, Inc. v. Lincoln Gen. Ins. Co.*,
   361 F. App'x 338 (3d Cir. 2010) ............................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................3

*Banner Health v. Med. Sav. Ins. Co.*,
   163 P.3d 1096 (Ariz. Ct. App. 2007).....................8, 9, 10, 18

*Bouffard v. Lab. Corp. of Am. Holdings*,
   No. 1:17-cv-00193 (M.D.N.C. May 8, 2017) ......................2, 3

*Californians for Disability Rights v. Mervyn's, LLC*,
   138 P.3d 207 (Cal. 2006) ...................................................7, 14

*Canestaro v. Raymour & Flanigan Furniture Co.*,
   No. 2012-1639, 2013 WL 6985415 (N.Y. Sup. Ct. May 20, 2013) ............................9, 10, 12

*Ciser v. Nestle Waters N. Am. Inc.*,
   596 F. App'x 157 (3d Cir. 2015) .........................................6, 20

*Colomar v. Mercy Hosp., Inc.*,
   461 F. Supp. 2d 1265 (S.D. Fla. 2006) ..................................11

*Cox v. Sears Roebuck & Co.*,
   647 A.2d 454 (N.J. 1994)........................................................13

*Crowe v. Tull*,
   126 P.3d 196 (Colo. 2006).....................................................6, 14

*DiCarlo v. St. Mary Hosp.*,
   530 F.3d 255 (3d Cir. 2008)....................................................11

*Doe v. HCA Health Servs. of Tenn., Inc.*,
   46 S.W.3d 191 (Tenn. 2001)...................................................11

*Dolan v. PHL Variable Ins. Co.*,
   No. 3:15-cv-01987, 2016 WL 6879622 (M.D. Pa. Nov. 22, 2016)...........................................6

*Dwoskin v. Bank of Am., N.A.*,
   850 F. Supp. 2d 557 (D. Md. 2012) .........................................6

*Edenborough v. ADT, LLC*,
No. 16-cv-02233, 2016 WL 6160174 (N.D. Cal. Oct. 24, 2016) ...........................................12

*Ellis Hosp. v. Little*,
409 N.Y.S.2d 459 (N.Y. App. Div. 1978) ...............................................................................11

*Emerson Radio Corp. v. Orion Sales, Inc.*,
80 F. Supp. 2d 307 (D.N.J. 2000) ...........................................................................................19

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007)....................................................................................................17

*Galvan v. Nw. Mem'l Hosp.*,
888 N.E.2d 529 (Ill. App. Ct. 2008) ...............................................................................8, 9, 11

*Gershon v. Hertz Corp.*,
626 N.Y.S.2d 80 (N.Y. App. Div. 1995) ................................................................................13

*Globe Motor Co. v. Igdalev*,
139 A.3d 57 (N.J. 2016).........................................................................................................18

*Hardaway v. Equity Residential Mgmt., LLC*,
No. 13-0149, 2016 WL 3957648 (D. Md. July 22, 2016) ..................................................7, 14

*Harnish v. Widener Univ. Sch. of Law*,
931 F. Supp. 2d 641 (D.N.J. 2013) ......................................................................................3, 5

*HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*,
805 F. Supp. 2d 1115 (D. Colo. 2011)......................................................................................6

*Hillsborough Cnty. Hosp. Auth. v. Fernandez*,
664 So.2d 1071 (Fla. Dist. Ct. App. 1995) ..........................................................7, 8, 10, 18

*Holeman v. Neils*,
803 F. Supp. 237 (D. Ariz. 1992) .......................................................................................7, 14

*Huntington Hosp. v. Abrandt*,
779 N.Y.S.2d 891 (N.Y. App. Div. 2004) ...................................................................8, 10, 18

*Jefferson v. Collins*,
905 F.Supp.2d 269 (D.D.C. 2012) ..........................................................................................15

*Judge v. Blackfin Yacht Corp.*,
815 A.2d 537 (N.J. Super. Ct. App. Div. 2003).....................................................................12

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ..................................................................................................6

iv

*Kolari v. New York-Presbyterian Hosp.*,
　　382 F. Supp. 2d 562 (S.D.N.Y. 2005) ................................................................11

*Levine v. Blue Shield of Cal.*,
　　117 Cal. Rptr. 3d 262 (Cal. Ct. App. 2010) .......................................................12

*Lightning Lube, Inc. v. Witco Corp.*,
　　4 F.3d 1153 (3d Cir. 1993) ..................................................................12, 16, 17

*Llado-Carreno v. Guidant Corp.*,
　　No. 09-20971-CIV, 2011 WL 705403 (S.D. Fla. Feb. 22, 2011) ............................6

*Margolis v. Sandy Spring Bank*,
　　110 A.3d 784 (Md. Ct. Spec. App. 2015) ...........................................................10

*McCoy v. E. Texas Med. Ctr. Reg'l Healthcare Sys.*,
　　388 F. Supp. 2d 760 (E.D. Tex. 2005) .................................................................9

*Montgomery v. Kraft Foods Global, Inc.*,
　　No. 1:12-cv-00149, 2012 WL 6084167 (W.D. Mich. Dec. 6, 2012) ...................7, 14

*N.J. Citizen Action v. Schering-Plough Corp.*,
　　842 A.2d 174 (N.J. Super. Ct. App. Div. 2003) ................................................13, 14

*In re Packaged Ice Antitrust Litig.*,
　　779 F. Supp. 2d 642 (E.D. Mich. 2011) ...............................................................6

*Perri v. Prestigious Homes, Inc.*,
　　No. L-4169-08, 2012 WL 95564 (N.J. Super. Ct. App. Div. Jan. 13, 2012) ...........16

*Picus v. Wal-Mart Stores, Inc.*,
　　256 F.R.D. 651 (D. Nev. 2009) ........................................................................7, 14

*Quigley v. Esquire Deposition Servs., LLC*,
　　975 A.2d 1042 (N.J. App. Div. 2009) .................................................................8, 9

*Richter v. CC-Palo Alto, Inc.*,
　　176 F. Supp. 3d 877 (N.D. Cal. 2016) ..............................................................7, 14

*Rockford Mem'l Hosp. v. Havrilesko*,
　　858 N.E.2d 56 (Ill. App. Ct. 2006) ..................................................................10, 12

*Shelton v. Duke Univ. Health Sys.*,
　　No. 05-CVS-001985, 2005 WL 6013159 (N.C. Super. Ct. July 11, 2005) ............18

*Shibata v. Marco LIM*,
　　133 F. Supp. 2d 1311 (M.D. Fla. 2000) .............................................................6, 14

v

*Slack v. Suburban Propane Partners, L.P.*,
   No. 10-2548, 2010 WL 5392845 (D.N.J. Dec. 22, 2010).......................................21

*Slim CD, Inc. v. Heartland Payment Sys., Inc.*,
   No. 06–2256, 2007 WL 2459349 (D.N.J. Aug. 24, 2007).........................................5

*In re Supreme Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006)...............................................................................15

*In re Terazosin Hydrochloride Antitrust Litig.*,
   220 F.R.D. 672 (S.D. Fla. 2004)..........................................................................20

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
   No. 08-939, 2009 WL 2940081 (D.N.J. Sept. 11, 2009).........................................20

*Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*,
   655 A.2d 417 (N.J. 1995)......................................................................................8

*U.S. v. Cartwright*,
   411 U.S. 546 (1973)............................................................................................10

*Waldron v. Jos. A. Bank Clothiers, Inc.*,
   No. 12-CV-02060, 2013 WL 12131719 (D.N.J. Jan. 28, 2013).................................20

*Waldrop v. Green Tree Servicing, LLC*,
   No. 2:14-cv-2091, 2015 WL 5829879 (D. Nev. Oct. 5, 2012)...................................6

*Williams v. BASF Catalysts LLC*,
   765 F.3d 306 (3d Cir. 2014)................................................................................16

*Williams v. Mission Viejo Emergency Med. Assocs.*,
   No. G043849, 2011 WL 5025932 (Cal. Ct. App. Oct. 21, 2011).............................10

*Williamson v. Allstate Ins. Co.*,
   204 F.R.D. 641 (D. Ariz. 2001)..............................................................................6

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
   854 A.2d 425 (Pa. 2004)..................................................................................6, 14

## Other Authorities

Fed. R. Civ. P. 12(b)(6)............................................................................................5

Fed. R. Civ. P. 9(b) ..................................................................................................5

## INTRODUCTION

This is an action against Quest Diagnostics Incorporated ("QDI"), a medical laboratory, brought by nine different Plaintiffs who sought out QDI's testing services. Each Plaintiff alleges that they (or their physician, on the patient's behalf) asked QDI to provide laboratory services. Each agrees that QDI provided the services they requested. Eight of the Plaintiffs had health insurance coverage, but their health insurer determined that the services QDI provided were not covered by the patient's health plan. One of the Plaintiffs had no insurance at all when she asked QDI to provide her with laboratory services. No Plaintiff alleges that there were any issues with the timeliness or quality of the services QDI provided. Nor does any Plaintiff allege that s/he inquired about the price of QDI's services before requesting them.

Having requested and received the services they ordered from QDI, Plaintiffs now contend that QDI's charges are too high because QDI agrees to accept less than its full charges from third-party payors who are able to negotiate discounts. Indeed, Plaintiffs ask this Court to sit as a rate regulator and establish what Plaintiffs contend are "fair market value" prices for QDI's services, and to award them—and a class of all patients who lacked insurance coverage throughout the United States—damages. The fact that patients with insurance pay less than those without is widely known, and certainly not unique to the clinical laboratory industry. However, Plaintiffs in essence ask this Court to declare that such differential pricing is unlawful. The same differential pricing is used throughout the healthcare industry nationwide, and inherent in how medical billing works.

Each of the Plaintiffs' thirteen causes of action, the majority of which allege violations of different states' unfair and deceptive trade practice statutes, is based on two legal theories. First, Plaintiffs claim that it is unfair for QDI to accept different payment amounts from different customers. This claim rests on a simple but flawed premise: that using differential pricing—*i.e.*, accepting discounted payments from some patients, but not others—constitutes an unfair trade

1

practice. Numerous courts have held that it does not. Uninsured (and underinsured) patients are not similarly situated to insurers. Health insurers have significant negotiating power due to their size and ability to ensure prompt payment (and resulting lower collection costs for providers) for covered services. This is why healthcare providers, like QDI, are willing to accept less than their full charges for services covered by insurers. Doing so is not unlawful. Indeed, if healthcare providers were required to accept the same amount as payment from everyone, there would be no need for insurance at all.

Second, Plaintiffs claim that QDI defrauded them by failing to disclose certain supposedly material facts, including that QDI accepts different payment amounts from differently-situated customers. Plaintiffs also assert that QDI concealed which tests would not be covered by their insurance providers and the amounts that QDI has agreed to accept as payment from insurers. But Plaintiffs fail to allege that QDI knew in advance which tests would be covered, or that QDI had any affirmative duty to disclose this information (assuming it did know). Plaintiffs also fail to allege that they were actually unaware of these withheld facts, or to allege causation—*i.e.*, that they would have acted differently or been able to obtain a lower price had they known these facts.

Plaintiffs' claim that "[t]he United States is undergoing a healthcare crisis," with "healthcare recipients . . . increasingly being required to absorb greater costs for health care, through higher insurance premiums, copays, deductibles, and exclusions." Compl. ¶ 3. They take issue with the current state of healthcare billing in this country, and this lawsuit is their apparent attempt to change it.[1] But, whatever the virtues of their policy arguments, they do not present a cognizable legal claim against QDI.

---

[1] As part of that effort, Plaintiffs' counsel has also brought a nearly identical lawsuit against Laboratory Corporation of America ("LabCorp"), a direct competitor to QDI, which they filed the exact same day as this one. *Bouffard v. Lab. Corp. of Am. Holdings*, No. 1:17-cv-00193

## ALLEGATIONS OF THE COMPLAINT[2]

The Parties.  QDI is a New Jersey-based healthcare company and the largest medical laboratory in the United States, with facilities located throughout the nation. Compl. ¶¶ 2, 34, 36. It conducts over 100 million diagnostic laboratory tests for patients each year. *Id.* ¶ 2. Plaintiffs are nine individuals who reside in various states and received laboratory tests from QDI. *Id.* ¶¶ 54-114. All of the Plaintiffs had some form of health insurance at the time of their tests (either private insurance or Medicare), except for Plaintiff Jill Roach, who had no insurance. *Id.* ¶ 54, 62, 69, 80, 85, 92, 98, 106, 111.

The Charges.  As to each of the insured individuals, Plaintiffs allege that they received tests from QDI for which their insurer denied coverage and would not pay. Compl. ¶¶ 58, 64, 67, 73, 77, 82, 87, 95, 108, 111. As to Ms. Roach, she had no insurance, so she was charged the full, undiscounted amount. *Id.* ¶¶ 98-99. None of the Plaintiffs allege that they asked about the charges in advance. All of the Plaintiffs contend that they should have been charged only the amount that QDI accepts from discounted arrangements with third party payors, such as the insurance companies, and instead were charged QDI's "rack rates" or list prices. *Id.* ¶¶ 4, 19.

The Claims.  The complaint alleges, under a variety of legal theories, that QDI must agree to accept from all payers "fair market value," which they define as "'the price that would be agreed on between a willing buyer and a willing seller, with neither being required to act, and both having reasonable knowledge of the relevant facts.'" Compl. ¶ 118 (quoting IRS Publication 561).

---

(M.D.N.C. May 8, 2017) (ECF 1). LabCorp has likewise moved to dismiss that complaint. *Id.* (ECF 12).

[2] While QDI disputes many of the factual allegations of the complaint, QDI assumes the truth of the allegations solely for purposes of this motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 646–47 (D.N.J. 2013).

According to Plaintiffs, the fair market value is the rates negotiated between QDI and "Benefit Plans," *id.* ¶ 40, which they define to mean "private and public healthcare insurers," *id.* ¶ 4. Relying on this premise, Plaintiffs assert causes of action under ten different consumer fraud statutes, and they also bring claims for common law fraud, breach of contract, and unjust enrichment.

The purported basis for Plaintiffs' allegations is two-fold. First, Plaintiffs allege that QDI's pricing scheme is unfair, because "[w]hen a patient lacks coverage or their insurer denies coverage, Quest insists that the patients pay . . . rack rates, rather than the negotiated or government-mandated . . . rates." Compl. ¶ 44. Plaintiffs acknowledge that they are not similarly situated to insurers, but nonetheless allege that they should "only owe Quest those amounts reflected by fair market value rates"—*i.e.*, what an insurer would owe. *Id.* ¶¶ 19, 40. Plaintiffs also take issue with the difference in payment amounts that QDI is willing to accept from insurers as compared to uninsured patients. Indeed, the complaint is replete with comparisons between QDI's regular list prices and the amounts paid by private insurers, Medicare, and Medicaid. *Id.* ¶¶ 5-13, 56-57, 59, 65-67, 74, 78, 83, 89, 94, 96, 101-02, 108, 111-12. Based on these comparisons, Plaintiffs assert that because QDI's "rack [r]ates . . . are well beyond what Benefit Plans negotiate," they are "excessive," "unconscionable," "unfair," and "commercially unreasonable." *Id.* ¶¶ 41, 44, 138.

Plaintiffs also allege that QDI fraudulently concealed several purportedly material facts from them. Compl. ¶¶ 131-134. First, they contend that QDI should be required to disclose "the discounts negotiated by the Benefit Plans." *Id.* ¶ 17, 132. Next, they allege that QDI's invoices are "intentionally misleading," because they "aggregate charges for multiple lab tests," "aggregate third-party payments," and "aggregate copays or deductibles or other payments billed directly to patients." *Id.* ¶ 15. Plaintiffs contend that QDI should be required to inform them on a test-by-test

basis, "what, if any, insurance discounts or insurance payments are being applied," "what amounts patients are being required to pay," and what "tests were disallowed by their insurer." *Id.* ¶¶ 16-17. They repeatedly allege that these non-disclosures were "misleading and deceptive," but they provide no indication as to how or why. *Id.* ¶ 131.

## ARGUMENT

### I.   PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW.

#### A.  Standard of Review.

A complaint must be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although a court must accept as true a complaint's "well-pleaded" factual allegations, "[a] plaintiff is obligated to provide the 'grounds' of his 'entitle[ment] to relief,' which requires more than 'labels and conclusions.'" *Harnish v. Widener Univ. Sch. of Law*, 931 F. Supp. 2d 641, 647 (D.N.J. 2013) (internal quotations and citation omitted).

In assessing whether the complaint states a claim, Federal Rule of Civil Procedure 9(b) requires that claims predicated on alleged fraud or mistake be pled with particularity. Fed. R. Civ. P. 9(b). Plaintiffs' claims are premised on allegations that QDI misrepresented and omitted material information related to the price of QDI's testing services. *E.g.*, Compl. ¶ 15 ("Quest customarily issues invoices to patients (including Plaintiffs) that are intentionally misleading."), ¶ 131 ("Quest has engaged in fraudulent, misleading and deceptive efforts to conceal the true nature of its unlawful conduct . . . accomplish[ing] its concealment by its active misrepresentations and omissions[.]"). Plaintiffs further allege that they mistakenly assumed that QDI would give them the same discount it gives to insurance providers. *Id.* ¶¶ 60 ("[T]he Leslies reasonably assumed that, at worst, Quest would charge fair market value rates for any tests not covered by insurance. No person would knowingly pay an excessive rate."); *see also id.* ¶¶ 68, 79, 84, 91, 97, 104, 109, 113. Accordingly, Plaintiffs must satisfy the heightened pleading requirements of Rule

9(b). *See Slim CD, Inc. v. Heartland Payment Sys., Inc.*, No. 06–2256, 2007 WL 2459349, at *11 (D.N.J. Aug. 24, 2007) (Rule 9(b) applies to claims under New Jersey's Consumer Fraud Act); *Llado-Carreno v. Guidant Corp.*, No. 09-20971-CIV, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (Rule 9(b) applicable to claims under the Florida consumer fraud act that "sound in fraud").[3]

### B. Plaintiffs' Consumer Fraud Claims All Fail.

In Counts I through X of the complaint, Plaintiffs' assert causes of action under ten different consumer fraud statutes, including New Jersey (Count I), Florida (Count II), Colorado (Count III), Pennsylvania (Count IV), Arizona (Count V), Michigan (Count VI), Maryland (Count VII), Nevada (Count VIII), and California (Counts IX and X). To establish a cause of action under any of these statutes, a plaintiff must show, at a minimum, (1) a deceptive or unfair business practice (2) that caused (3) actual loss or damage to the consumer. *See, e.g.*, *Ciser v. Nestle Waters N. Am. Inc.*, 596 F. App'x 157, 160 (3d Cir. 2015) (citing *Zaman v. Felton*, 98 A.3d 503, 516 (N.J. 2014)).[4] Plaintiffs' claims must be dismissed because (1) differential or "high" pricing does not

---

[3] The other relevant consumer fraud statutes similarly require Rule 9(b) to be met where the allegations sound in fraud. *See HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*, 805 F. Supp. 2d 1115, 1120–21 (D. Colo. 2011) (Rule 9(b) applies to deceptive or unfair trade practice claim under Colorado Consumer Protection Act); *Dolan v. PHL Variable Ins. Co.*, No. 3:15-cv-01987, 2016 WL 6879622, at *5 (M.D. Pa. Nov. 22, 2016) (same under Pennsylvania's consumer fraud statute); *Williamson v. Allstate Ins. Co.*, 204 F.R.D. 641, 644 (D. Ariz. 2001) (Arizona); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011) (Michigan); *Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 569 (D. Md. 2012) (Maryland); *Waldrop v. Green Tree Servicing, LLC*, No. 2:14-cv-2091, 2015 WL 5829879, at *4 (D. Nev. Oct. 5, 2012) (Nevada); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (same under both California's Consumers Legal Remedies Act and Unfair Competition Law).

[4] *See also Shibata v. Marco LIM*, 133 F. Supp. 2d 1311, 1317 (M.D. Fla. 2000) (in Florida, consumer must show "seller engaged in unfair or deceptive act[]" and "allege sufficient facts to show that the consumer has been actually aggrieved by the unfair or deceptive act"); *Crowe v. Tull*, 126 P.3d 196, 201 (Colo. 2006) (Colorado requires consumer to show, *inter alia*, "defendant engaged in an unfair or deceptive trade practice," "plaintiff suffered injury in fact," and "challenged practice caused the plaintiff's injury"); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 501 (Pa. 2004) (Pennsylvania requires "a plaintiff [to] show that he justifiably relied on [] defendant's wrongful conduct or representation and that he suffered harm as a result

constitute an unfair or deceptive practice, and (2) Plaintiffs have failed to plead their concealment claims with the particularity required by Rule 9(b).

### 1.   Neither Differential Pricing Nor "High" Prices State A Claim.

Plaintiffs' consumer fraud claims are all premised on the fact that QDI accepts discounted amounts from insurers and does not extend those same discounts to all patients without insurance coverage. Compl. ¶¶ 4, 19, 40–41, 44, 48. However, it is neither unlawful, nor inherently unfair, to give discounts to some patients but not others.

In *Hillsborough County Hospital Authority v. Fernandez*, 664 So.2d 1071 (Fla. Dist. Ct. App. 1995), the Florida courts confronted this same issue. In that case, a patient who had been in a car accident received medical treatment at Tampa General Hospital. *Id.* at 1071. The patient had no health insurance, nor the financial ability to pay his medical bills. *Id.* After the hospital sought a lien on some of the patient's assets, he challenged the "reasonableness" of the hospital's charges. *Id.* at 1071–72. Relying "solely on evidence that managed care payors receive a discount," the patient claimed that the hospital's charges were "unreasonable." *Id.* at 1072. The court rejected

---

of that reliance"); *Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992) (in Arizona, plaintiff must show "a false promise or misrepresentation made in connection with the sale or advertisement of merchandise," and "consequent and proximate injury" due to consumer's reliance); *Montgomery v. Kraft Foods Global, Inc.*, No. 1:12-cv-00149, 2012 WL 6084167, at *4 (W.D. Mich. Dec. 6, 2012) (in Michigan, defendant's conduct must violate one of the unfair or deceptive acts specifically prohibited, and plaintiff must suffer a loss as a result); *Hardaway v. Equity Residential Mgmt., LLC*, No. 13-0149, 2016 WL 3957648, at *9 (D. Md. July 22, 2016) (in Maryland, plaintiff must show defendant engaged in unfair or deceptive trade practice, plaintiff relied on practice, and doing so caused harm); *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009) (in Nevada, plaintiff must show an act of consumer fraud by the defendant which caused plaintiff damage); *Californians for Disability Rights v. Mervyn's, LLC*, 138 P.3d 207, 209 (Cal. 2006) (California UCL requires litigant to show s/he "has suffered an injury in fact and has lost money or property as a result of [the] unfair competition"); *Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877, 899 (N.D. Cal. 2016) (California CLRA requires plaintiff to show defendant's conduct was unfair or deceptive, and plaintiff was damaged by it).

that claim, holding that "evidence of [ ] contractual discounts, standing alone, is insufficient to prove that Tampa General's charges were unreasonable." *Id.* at 1072.

Other courts have reached this same conclusion. *See, e.g.*, *Huntington Hosp. v. Abrandt*, 779 N.Y.S.2d 891, 892 (N.Y. App. Div. 2004) ("The fact that lesser amounts for the same services may be accepted from commercial insurers or government programs as payment in full does not indicate that the amounts charged to defendant were not reasonable[.]"); *Banner Health v. Med. Sav. Ins. Co.*, 163 P.3d 1096, 1102 (Ariz. Ct. App. 2007) (explaining that "the fact that hospitals routinely accept reduced payments on behalf of many patients" does not mean "that the published and billed rates are unreasonable"); *Galvan v. Nw. Mem'l Hosp.*, 888 N.E.2d 529, 538 (Ill. App. Ct. 2008).

This Court should follow the lead of these numerous other decisions and reject Plaintiffs' claim here. Consumer fraud statutes are designed to prevent commercial practices that are "misleading." *See, e.g.*, *Quigley v. Esquire Deposition Servs., LLC*, 975 A.2d 1042, 1047 (N.J. App. Div. 2009) ("'[t]he capacity to mislead is the prime ingredient of all types of consumer fraud' proscribed by the Consumer Fraud Act" (quoting *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994)). Accepting different payment amounts from different customers is not "misleading," nor does it "stand outside the norm of reasonable business practice." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 655 A.2d 417, 430 (N.J. 1995). Contrary to Plaintiffs' assertion, QDI's use of differential pricing is neither unfair nor deceptive.

Courts have also recognized that uninsured/underinsured patients and health insurers are not similarly situated. *Galvan*, 888 N.E.2d at 538–39; *Banner Health*, 163 P.3d at 1102–03. Insurers can provide a medical laboratory like QDI with valuable economic advantages. For one, they can provide contractual assurances that QDI will not only be paid, but paid promptly, for the

services QDI provides to covered patients. *Galvan*, 888 N.E.2d at 539. In addition, when QDI contracts with an insurer, QDI can reasonably expect, based on the insurer's market share, that a significant number of the insurers' members will use QDI for their testing needs. *Id.* This increased volume is valuable to QDI. *Id.* Because QDI can expect these benefits from insurance providers, QDI is willing to negotiate with them and to offer them a discount. Uninsured patients, by contrast, offer providers none of these benefits, which Plaintiffs acknowledge. Compl. ¶ 41 (recognizing that insurers have strong bargaining power).

Plaintiffs, however, assert that they should be entitled to pay the same amount insurers do, or what they deem "fair market value" prices. However, a fair market will consider the value a buyer brings to the table. There is nothing impermissible about QDI's practice of accepting lower payments from insurance providers in exchange for these benefits. *Galvan*, 888 N.E.2d at 538–39; *Banner Health*, 163 P.3d at 1101–02 ("There is nothing illegal or unauthorized . . . about hospitals contracting with insurers and government entities to accept reduced payments in satisfaction of their published rates, in return for an anticipated volume of business and prompt payments."); *Canestaro v. Raymour & Flanigan Furniture Co.*, No. 2012-1639, 2013 WL 6985415, at *3 (N.Y. Sup. Ct. May 20, 2013) ("Price negotiation is part of a time-honored haggling or bargaining process, and is not . . . unlawful." (internal quotations omitted)).

To the extent Plaintiffs base their claims on an argument that QDI's list prices are just too high, they fare no better. Compl. ¶¶ 40–41, 44, 48. For years, plaintiffs around the country have raised similar claims against medical providers, and these claims have been consistently rejected. *See, e.g.*, *McCoy v. E. Texas Med. Ctr. Reg'l Healthcare Sys.*, 388 F. Supp. 2d 760, 762-63 & n.1 (E.D. Tex. 2005) (listing 25 cases). As courts have recognized, charging "high" prices is not, standing alone, unfair or fraudulent. *See Quigley*, 975 A.2d at 1048 (explaining that a consumer

fraud claim may not be supported "solely by an allegation that the price of a product was excessive, without consideration of the manner in which it was marketed"); *Canestaro*, 2013 WL 6985415, at *3 ("charging 'excessive prices' is not itself actionable under [New York's consumer fraud statute]"); *Williams v. Mission Viejo Emergency Med. Assocs.*, No. G043849, 2011 WL 5025932, at *5 (Cal. Ct. App. Oct. 21, 2011) (unfair-practice claim based on "allow[ing] [medical] providers to impose on consumers [] unilaterally chosen price without disclosure or negotiation" unavailing). Nor is there anything deceptive about charging a published, retail price. *See Rockford Mem'l Hosp. v. Havrilesko*, 858 N.E.2d 56, 64 (Ill. App. Ct. 2006) ("[c]harging unconscionably high prices is not, by itself, unfair"); *Margolis v. Sandy Spring Bank*, 110 A.3d 784, 794 (Md. Ct. Spec. App. 2015) (misrepresentation claim under Maryland consumer fraud act based on excessive fees found unavailing where defendant disclosed amount of fee and no other representation was made).

Even if the theory that QDI's charges are "too high" could theoretically support a claim, Plaintiffs fail to allege sufficient facts to support it. The only factual support Plaintiffs offer for their claim that QDI's list prices are too high are examples of the prices that Medicare, Medicaid, and insurance providers pay. However, as discussed above, Plaintiffs are differently-situated, and therefore, not entitled to those same discounts. And in any event, such a comparison is insufficient to show that QDI's charges are unfair or unconscionable. *Hillsborough Cnty. Hosp. Auth.*, 664 So.2d at 1072 ("evidence of contractual discounts, standing alone, is insufficient to prove that [hospital's] charges were unreasonable"); *Huntington Hosp.*, 779 N.Y.S.2d at 892; *Banner Health*, 163 P.3d at 1102 ("fact that hospitals routinely accept reduced payments on behalf of many patients" does not mean "that the published and billed rates are unreasonable").

In addition, any reasonableness analysis would need to take into account the factors that a "willing seller" would consider. *See U.S. v. Cartwright*, 411 U.S. 546, 551 (1973) ("[F]air market

10

value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." (internal quotations and citation omitted)); Compl. ¶ 19 (defining fair market value as what "willing buyer and a willing seller" would agree to). These factors must include how much the service provided actually costs, the likelihood of non-payment, how price changes will affect demand from specific groups, the location in which the seller operates, and what the seller's competitors are charging. *Colomar v. Mercy Hosp., Inc.*, 461 F. Supp. 2d 1265, 1269 (S.D. Fla. 2006); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 198 (Tenn. 2001) (inquiry into the reasonableness of hospital pricing must consider "similar charges of other hospitals in the community" and the "hospital's internal factors"); *Ellis Hosp. v. Little*, 409 N.Y.S.2d 459, 461 (N.Y. App. Div. 1978). Plaintiffs' complaint is silent on all of these factors.

In rejecting similar claims, other courts—including the Third Circuit—have concluded that courts are ill-equipped to sit as rate regulators and rule on the "fairness" of charges for healthcare services. *See, e.g.*, *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 264 (3d Cir. 2008) ("A court could not possibly determine what a 'reasonable charge' for hospital services would be without wading into the entire structure of providing hospital care and the means of dealing with hospital solvency."); *Kolari v. New York-Presbyterian Hosp.*, 382 F. Supp. 2d 562, 565–66 (S.D.N.Y. 2005); *Galvan*, 888 N.E.2d at 538-39. This Court should decline Plaintiffs' invitation to do so here.

## C. Plaintiffs Fail To Plead With Particularity Any Deceptive Conduct.

Plaintiffs next allege that QDI engaged in unlawful and deceptive conduct by concealing material information from Plaintiffs related to QDI's billing practices. Compl. ¶¶ 15–17, 50. This claim is equally unavailing, because none of the allegations adequately plead a claim against QDI.

11

1. **Plaintiffs Cannot Show QDI Concealed Its Use of Differential Pricing.**

Plaintiffs first allege that QDI failed to disclose that patients covered by private insurers, Medicare, and Medicaid receive discounts from QDI's list prices that self-payers and under-insured patients do not. Compl. ¶ 17 ("Quest fails to disclose to patients the fair market value rates"). However, Plaintiffs fail to cite to any law or statute placing an affirmative duty on QDI to disclose this information. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993) (where a "claim for fraud is based on silence or concealment," plaintiff must adequately allege a duty to disclose the withheld information); *Judge v. Blackfin Yacht Corp.*, 815 A.2d 537, 543 (N.J. Super. Ct. App. Div. 2003) ("There being no duty to disclose, there can be no finding that defendant knowingly concealed a material fact with the intent that plaintiff rely on the concealment."). *See also Edenborough v. ADT, LLC*, No. 16-cv-02233, 2016 WL 6160174, at *3 (N.D. Cal. Oct. 24, 2016) (in California, "to be actionable the omission must be contrary to a representation actually made," or be "a fact the defendant was obliged to disclose"). This lack of authority is unsurprising, because the law does not impose any duty on healthcare providers, like QDI, to provide their patients with information about discounts provided to other payors. *See, e.g.*, *Levine v. Blue Shield of Cal.*, 117 Cal. Rptr. 3d 262, 274 (Cal. Ct. App. 2010) ("[W]e are aware of no authority that would support the proposition that an entity . . . is under a common law duty to disclose the lowest price that it is willing to accept in exchange for providing health care coverage."); *Canestaro*, 2013 WL 6985415, at *4; *Rockford Mem'l Hosp. v. Havrilesko*, 858 N.E.2d 56, 63 (Ill. App. Ct. 2006) (regardless of whether hospital had a duty or not, court was "skeptical that the mere failure of a hospital to volunteer its rates [was] actionable" under consumer fraud act). Nor do Plaintiffs provide any factual support to show why failing to disclose a discount offered to a volume buyer, to which consumers like Plaintiffs would not be entitled, would be deceptive or otherwise unfair. *See Canestaro*, 2013 WL 6985415, at *3 (finding no deceptive trade

practice, in part, because "a merchant need not 'disclose' to each potential buyer with whom it may negotiate that the buyer might be able to negotiate a deeper discount under some other payment scenario"); *Gershon v. Hertz Corp.*, 626 N.Y.S.2d 80, 81 (N.Y. App. Div. 1995) ("Defendant's alleged practice of not disclosing to prospective customers alternative rental arrangements at lower rates than that the customer had inquired about is not a deceptive practice under General Business Law § 349.").

Plaintiffs also fail to plead (at all, let alone with particularity) that they were actually misled or deceived by this purported non-disclosure. *See N.J. Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177 (N.J. Super. Ct. App. Div. 2003) ("to constitute consumer fraud . . . the business practice in question must be 'misleading'"). Plaintiffs do not allege that they were unaware that volume-payors (like insurance companies) who are able to negotiate more favorable terms pay less than individual payers for medical services. Indeed, it is well-known in the U.S. healthcare system that insurers can secure volume discounts that are simply unavailable to individuals. Because Plaintiffs do not allege that they were actually misled, these allegations fail to state a claim.

## 2.   <u>Plaintiffs Do Not Allege QDI Concealed Material Facts On Its Invoices.</u>

Plaintiffs separately allege that QDI failed to disclose material information concerning each Plaintiffs' insurance. Specifically, Plaintiffs contend that QDI should have disclosed which tests each Plaintiff's insurer would not cover. *E.g.*, Compl. ¶ 17. They also assert that QDI should have provided them with a more discrete breakdown of QDI's charges, showing line-by-line which charges were covered by the insurer and which charges Plaintiffs were responsible for paying. *Id.* ¶¶ 15-17. But these claims are meritless too, because Plaintiffs do not allege that QDI knew in advance that their insurance providers would not cover particular tests, nor do they point to any affirmative duty placed on QDI to disclose such information (assuming QDI knew it). *See Cox*,

647 A.2d at 462 (under New Jersey's Consumer Fraud Act, violations based on omissions must be knowing, such that "the plaintiff must show that the defendant acted with knowledge").

Plaintiffs also once again fail to allege that they were actually misled by these non-disclosures. In fact, the complaint suggests the opposite—that Plaintiffs themselves were aware that insurers frequently deny coverage, and that it was likely that coverage might be denied for some or all of Plaintiffs' tests. Compl. ¶¶ 42-43. Plaintiffs also fail to allege that they sought any of this information from QDI. Nor do they mention the explanation of benefits that they each would have received from their insurer describing much of this same information, including which tests were covered, how much the insurer paid, and what costs remained. Here too, Plaintiffs allegations fail.

### 3.   Plaintiffs Fail to Allege That These Non-Disclosures Caused Harm.

Regardless of the alleged deception, Plaintiffs' concealment allegations fail for the separate reason that Plaintiffs do not allege facts showing that these non-disclosures were material, and that Plaintiffs suffered damage as a result of QDI's concealment. *See Schering-Plough Corp.*, 842 A.2d at 176 (Under New Jersey's Consumer Fraud Act, a plaintiff must allege "a causal relationship between the defendants' unlawful conduct and the plaintiffs' ascertainable loss."); *Shibata*, 133 F. Supp. 2d at 1317 (in Florida, consumer must "actually [be] aggrieved by the unfair or deceptive act"); *Crowe*, 126 P.3d at 201 (Colorado requires consumer to show "challenged practice caused the plaintiff's injury"); *Yocca*, 854 A.2d at 501 (similar in Pennsylvania); *Holeman*, 803 F. Supp. at 242 (Arizona); *Montgomery*, 2012 WL 6084167, at *4 (Michigan); *Hardaway*, 2016 WL 3957648, at *9 (Maryland); *Picus*, 256 F.R.D. at 658 (Nevada); *Californians for Disability Rights*, 138 P.3d at 209 (California UCL); *Richter*, 176 F. Supp. 3d at 899 (California CLRA). Plaintiffs do not allege that if they had known about these discounted rates, they would have been able to negotiate discounted rates. Nor do Plaintiffs allege that they would have sought a better price

14

elsewhere if they were aware that QDI offered discounts to other patients. Plaintiffs also fail to allege that if they had known that their insurance provider would not cover all of the tests they sought, they would have been entitled to a discount, or been able to inquire elsewhere and find a better rate. In short, Plaintiffs have not only failed to show that QDI's non-disclosures were deceptive and unlawful, but they have also failed to show that they were material and caused Plaintiffs harm.

### 4. **Plaintiffs' Allegations Are Not Pled With Particularity.**

Finally, Plaintiffs' allegations come nowhere close to complying with Rule 9(b). Fraudulent omission claims must satisfy Rule 9(b), which requires Plaintiffs "to plead, among other things, who omitted the facts, what facts were omitted, why the omission was misleading, and when the disclosure should have been made." *Jefferson v. Collins*, 905 F.Supp.2d 269, 289–90 (D.D.C. 2012). In other words, Plaintiffs must support their allegations with the "who, what, where, when, and how of the events at issue." *In re Supreme Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006) (internal quotations omitted). Plaintiffs' allegations fall woefully short.

There is not a single allegation in the complaint that even attempts to identify who at QDI made any misrepresentation or supposedly concealed information from Plaintiffs. Nor do Plaintiffs allege where the misrepresentations allegedly occurred, or when the information that was withheld should have been disclosed. Plaintiffs also fail to plead with any specificity why the alleged misrepresentations and omissions were misleading and deceptive. Indeed, at no point do Plaintiffs affirmatively plead that they were unaware of the differential pricing scheme that QDI relies upon, nor do they ever allege that they asked QDI about its prices. Under Rule 9(b), Plaintiffs are required to allege each of who, what, when, where, and how—but instead they have alleged none of this.

### D.  The Remainder of Plaintiffs' Claims Fail As A Matter of Law.

In addition to their claims under various state unfair and deceptive trade practice statutes, Plaintiffs assert claims for common law fraud (Count XIII), breach of contract (Count XI), and unjust enrichment (Count XII). These claims fare no better.

### 1.  <u>Count XIII:  The Fraud Claim Fails.</u>

In Count XIII, Plaintiffs allege (on behalf of a putative nationwide class) that QDI's actions were fraudulent. Compl. ¶¶ 223–33. They rely on the exact same allegations discussed above, and these claims fail for the same reasons. Specifically, Plaintiffs allege that QDI committed fraud by "intentionally, knowingly, willfully and recklessly charg[ing] and collect[ing] fees for laboratory tests and other services in excess of fair market value rates," and by sending invoices that were intentionally misleading. *Id.* ¶¶ 224–25. To prevail on their fraud claim, Plaintiffs "must allege five elements: '(1) material misrepresentation [or omission] of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 317 (3d Cir. 2014) (internal citation omitted).

Once again, the thrust of Plaintiffs' claim is that QDI failed to disclose several material facts, including which tests were rejected by Plaintiffs' respective insurance providers, and what Plaintiffs' insurance providers would have paid for the tests had they not denied coverage. Compl. ¶ 225. But claims predicated on an omission can only succeed if there is a duty to disclose the fact in the first place, and Plaintiffs have not made any such allegations. *Perri v. Prestigious Homes, Inc.*, No. L-4169-08, 2012 WL 95564, at *5 (N.J. Super. Ct. App. Div. Jan. 13, 2012) ("[S]ilence can be fraudulent in circumstances where there is a duty to disclose."). Nor would it be proper to impose such a duty. QDI and Plaintiffs do not share any sort of "special relationship," which would give rise to a duty to disclose. *See Lightning Lube, Inc.*, 4 F.3d at 1185. They are not in a fiduciary

relationship, nor are they in a relationship where it would be proper for Plaintiffs to have "expressly reposit[ed] trust in [QDI]." *Id.* Plaintiffs also do not allege any affirmative false statement made by QDI concerning the price of its testing services, such that disclosure of this information would be "necessary to make a previous statement true." *Id.* In fact, nowhere in the complaint is there any mention of any Plaintiff seeking information related to QDI's prices. Nor do any of the allegations come even close to suggesting that QDI ever represented to Plaintiffs that they would not be charged more than QDI's negotiated third-party rates if their tests were not covered by their health plan.

Plaintiffs also state, without any actual factual support, that QDI had superior knowledge of these non-disclosed facts. Compl. ¶¶ 226, 229. But Plaintiffs could have easily discovered all of this information simply by asking QDI about its pricing or speaking with their insurers directly. Their decision not to do so does not impose some sort of legal duty upon QDI. In short, Plaintiffs were not without access to the information they now seek, they just chose not to engage in any sort of reasonable diligence to obtain it. This does not translate into fraud by QDI.

### 2.   Count XI:  The Breach of Contract Claim Fails.

In Count XI, Plaintiffs assert a breach of contract claim on behalf of the nationwide class. Plaintiffs allege that QDI entered into an implied contract with them, and that QDI violated the terms of that implied contract by "billing Plaintiffs and other members of the nationwide Class at excessive rates that were not based on negotiated fair market rates agreed to between Quest and Benefit Plans." Compl. ¶ 212.

To state a claim for breach of contract, Plaintiffs "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citing *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d

552, 561 (D.N.J. 2002)); *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016). Plaintiffs'

contract claim fails in multiple respects.

First, Plaintiffs' contract claim rests on the theory that QDI agreed to charge Plaintiffs less

than its list prices. But Plaintiffs offer no factual support for this assertion. They do not allege that

they ever asked QDI about price; they do not allege that QDI ever made any sort of representation

to them about price; and they do not allege that QDI ever stated that they would be entitled to a

discount, let alone one equal to that which an insurance provider would receive. Nor do Plaintiffs

point to any law, because none exists, suggesting that uninsured patients have some sort of

contractual right to a discount.

To the extent Plaintiffs are relying on this contract claim to assert that QDI's charges are

unreasonable, that claim also fails. As already discussed, the law does not support Plaintiffs'

contention that QDI's charges are unreasonable simply because QDI accepts discounted payments

from some payors. *Banner Health*, 163 P.3d at 1102 ("fact that hospitals routinely accept reduced

payments on behalf of many patients" does not mean "that the published and billed rates are

unreasonable"); *Hillsborough Cnty. Hosp. Auth.*, 664 So.2d at 1072 ("evidence of contractual

discounts, standing alone, is insufficient to prove that [hospital's] charges were unreasonable");

*Huntington Hosp.*, 779 N.Y.S.2d at 892. *See also Shelton v. Duke Univ. Health Sys.*, No. 05-CVS-

001985, 2005 WL 6013159 (N.C. Super. Ct. July 11, 2005) (¶ 6: "The fact, as alleged by plaintiff,

that the hospital's charges to [plaintiff] may have been higher than its charges to various insurance

companies who were financially responsible for paying the hospital bills of other patients does

not, as a matter of law, constitute a breach of the express contract between the parties.").

Moreover, Plaintiffs also fail to allege that they have performed their end of the contract,

which would require them to pay for the testing services they received. The closest the complaint

comes to any such allegation is by alleging that two Plaintiffs—the Leslies and Ms. Roach—have been making monthly payments of $10 and $25, respectively. Compl. ¶¶ 61, 105. But even these facts fail to show that Plaintiffs' have actually paid for their tests. In fact, they do not even show that any of the Plaintiffs have even paid the discounted price to which they repeatedly claim they are entitled. Outside of the Leslies and Ms. Roach, no other Plaintiff is alleged to have made any payment at all. Plaintiffs must allege facts showing that they have satisfied their end of the bargain, they have failed to do this and their claim falls short because of it.

Plaintiffs also appear to allege a breach of the implied covenant of good faith and fair dealing. Plaintiffs allege that QDI violated this covenant by "charg[ing] Plaintiffs . . . excessive rack rates," and by "fail[ing] to inform them of the negotiated fair market value rates agreed to between Quest and Benefit Plans." Compl. ¶ 214. This claim is duplicative of the implied contract claim, and again fails to sufficiently allege that QDI's list prices are unreasonable. Plaintiffs also suggest that QDI had a duty to disclose the discounted pricing it agreed to with insurance providers, *id.*; however, Plaintiffs do not cite to a single statute or law imposing such a duty on QDI.

In addition, proof of bad faith is a necessary element to an action for a breach of the covenant of good faith and fair dealing. *Emerson Radio Corp. v. Orion Sales, Inc.*, 80 F. Supp. 2d 307, 311 (D.N.J. 2000) ("[T]he [New Jersey] cases note a state of mind or malice-like element to breach of good faith and fair dealing, holding that the duty excludes activity that is unfair, not decent or reasonable, nor dishonest."). Plaintiffs fail to allege any ill will or malice by QDI. Nor could they. QDI did not act in bad faith when it charged Plaintiffs its normal list prices for the testing services QDI rendered. As previously discussed, for various legitimate business reasons, some payors are able to obtain discounts from QDI. QDI's failure to extend similar discounts to everyone is not indicative of bad faith. Accordingly, Plaintiffs' breach of contract claim fails.

19

### 3.  **Count XII:  The Unjust Enrichment Claim Fails.**

Finally, in Count XII, Plaintiffs allege unjust enrichment and seek restitution. Plaintiffs allege that QDI has impermissibly retained profits based on its charging uninsured and under-insured patients its full rates. Compl. ¶¶ 216–22. "A cause of action for unjust enrichment requires proof that defendants received a benefit and that retention of that benefit without paying would be unjust." *Ciser*, 596 F. App'x at 160 (quoting *Goldsmith v. Camden Cnty. Surrogate's Office*, 975 A.2d 459, 462 (N.J. Super. Ct. App. Div. 2009)). It also requires a plaintiff to "show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Amgro, Inc. v. Lincoln Gen. Ins. Co.*, 361 F. App'x 338, 346 (3d Cir. 2010) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)).[5]

This claim fares no better. For starters, Plaintiffs do not actually allege that they conferred a benefit on QDI because none of the plaintiffs allege that they have actually paid the charges they contend are too high. Nor do Plaintiffs allege facts showing that QDI was enriched beyond its contractual rights. QDI performed a variety of diagnostic tests and then charged Plaintiffs based on its regular, undiscounted charges. Plaintiffs could not have reasonably expected anything more from QDI, especially when Plaintiffs make no allegation that they ever inquired as to the price of QDI's services. Plaintiffs thus received exactly the services they requested, and were charged QDI's standard charges. Plaintiffs' claim for unjust enrichment fails. *See Waldron v. Jos. A. Bank Clothiers, Inc.*, No. 12-CV-02060, 2013 WL 12131719, at *5 (D.N.J. Jan. 28, 2013) ("Because

---

[5] These elements are essentially the same in all states. *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004) ("Courts have recognized that state claims of unjust enrichment are universally recognized causes of action that are materially the same throughout the United States." (internal quotations omitted)); *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, No. 08-939, 2009 WL 2940081, at *14 (D.N.J. Sept. 11, 2009).

Plaintiffs received the merchandise they paid for, . . . [at the] price . . . advertised . . . Plaintiffs have failed to a state a claim for unjust enrichment that is plausible on its face."); *Slack v. Suburban Propane Partners, L.P.*, No. 10-2548, 2010 WL 5392845, at *9 (D.N.J. Dec. 22, 2010) ("Because Plaintiffs received the propane they paid for, Plaintiffs have failed to a state a claim for unjust enrichment.").

## CONCLUSION

For the foregoing reasons, the Court should dismiss the case.

Dated: May 26, 2017

Respectfully submitted,

*/s/ Michael R. McDonald*
Michael R. McDonald, Esq.
Joshua S. Levy, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone:  (973) 596-4500
Facsimile:  (973) 596-0545
mmcdonald@gibbonslaw.com
jlevy@gibbonslaw.com

Richard D. Raskin, Esq. (admitted *pro hac vice*)
Mark B. Blocker, Esq. (admitted *pro hac vice*)
Scott D. Stein, Esq. (admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036
sstein@sidley.com
mblocker@sidley.com
rraskin@sidley.com

*Counsel for Quest Diagnostics Incorporated*

21