# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARVIN D. LESLIE**, *et al.*, | |
| Plaintiffs, | Civil Action No. 17-1590 (ES) (MAH) |
| v. | OPINION |
| **QUEST DIAGNOSTICS, INC.**, | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendant Quest Diagnostics, LLC's ("Quest") Motion to Dismiss Plaintiffs' Amended Complaint (D.E. No. 34) ("Motion"). After considering the parties' submissions, the Court reaches its decision without oral argument. Fed. R. Civ. P. 78(b); D.N.J. Civ. R. 78.1(b). After careful review, for the reasons set forth below, the Court GRANTS-in-part and DENIES-in-part the Motion.

## I. Background

### A. Factual Background

Quest is the leading provider of diagnostic and clinical testing in the United States. (D.E. No. 31, Amended Complaint ("Am. Compl.") ¶ 45). Plaintiffs are nineteen individuals who received laboratory testing services from Quest. (*Id.* ¶¶ 23–40).[1] At all relevant times, sixteen of the Plaintiffs maintained health insurance and three did not. (*Id.*). Because Plaintiffs were either un- or under-insured, Quest billed each for laboratory testing services based on "list" or

---

[1] In their opposition brief, Plaintiffs state that three Plaintiffs "intend to discontinue their existing claims without prejudice." (D.E. No. 35 ("Pl. Opp. Br.") at 4 n. 5). Because the Amended Complaint containing those claims is still the operative complaint, the Court considers the claims in its analysis.

"chargemaster" prices that Quest sets. Plaintiffs allege that these prices are substantially higher than the prices Quest customarily charges to other third-party customers and higher than the actual cost to Quest for the services provided. (*Id.* ¶¶ 3, 5 & 8–11). Plaintiffs bring this putative class action to challenge Quest's pricing and billing practices for uncovered or partially covered procedures. (*See generally id.*).

Plaintiffs proceed on two theories in the Amended Complaint: breach of implied contract and violations of the consumer protection laws of Plaintiffs' various home states. As to the contract-based theory,[2] Plaintiffs allege that Quest maintains two sets of rates: the aforementioned chargemaster rates that it bills to un- or under-insured patients (accounting for approximately 1% of Quest's customers) and negotiated rates that it charges to third-party payers and wholesale clients (accounting for approximately 99% of Quest's customers). (*See, e.g.*, *id.* ¶¶ 3–5, 8–11, 70 & 74–77). According to Plaintiffs, the chargemaster rates are generally 500% to 1000% of the negotiated rates, and therefore neither represent actual market nor reasonable rates for the services provided. (*Id.* ¶¶ 377–81). Under Plaintiffs' theory, because Quest never contracted with Plaintiffs to charge these rates, the relationship between Plaintiffs and Quest is governed by a contract implied-in-fact with a missing essential term: price. (*Id.* ¶¶ 3, 15–16 & 117–27). Plaintiffs allege that because this implied contract lacks an agreement on price, Quest is limited under contract principles to charge only a "reasonable" price, that is, a price which is more similar to the negotiated rates paid by third-party public or private insurers. (*Id.* ¶¶ 377–81).

Also under their contract theory, Plaintiffs allege in the alternative that their relationship with Quest is governed by a contract implied-in-law, and Quest has been unjustly enriched by overbilling Plaintiffs. (*Id.* ¶¶ 438 & 443). Relying on both theories, Plaintiffs further allege a

---

[2] These claims are styled as Count I: Declaratory Judgment Based on Principles of Implied Contract and Count II: Breach of Implied Contract or Unjust Enrichment.

claim for declaratory judgment that Quest's chargemaster prices are unreasonable and ask the Court to establish the reasonable price for Quest's services and award restitution or disgorgement for the price differential. (*Id.* ¶¶ 429–32 & 442–43).

Plaintiffs' second theory asserts violations of state consumer protection statutes. Under this theory, Plaintiffs allege that Quest has engaged in an unconscionable, unfair commercial practice; a deception, suppression, or omission; and/or fraud by billing Plaintiffs based on the chargemaster prices and then harassing Plaintiffs to collect the debt accrued for the billed laboratory services. (*Id.* ¶¶ 447–48, 455–56, 464–65, 472, 478–79, 485–86, 492–94, 501–02, 509–10, 515–16, 522–23 & 532–33). Plaintiffs further allege they paid the rate charged by Quest "under duress," refused to pay the chargemaster rate, or paid the bill unaware they had paid a rate which was much greater than the third-party payor rate. (*Id.* ¶¶ 450, 458, 467, 474, 481, 488, 496, 504, 512, 518, 526 & 535). Based on these practices, Plaintiffs allege violations of consumer fraud statutes in eleven states.[3]

In support of these allegations, Plaintiffs provide examples of the differences between the chargemaster prices billed to Plaintiffs for uncovered laboratory testing and the rates paid by third-party public and private insurers. Plaintiffs further allege that the chargemaster prices are "unreasonable" and do not reflect market rates or actual costs for the services provided. (*Id.* ¶¶ 11 & 54–74). Plaintiffs propose to calculate damages for this alleged overcharging by computing the

---

[3] Plaintiffs allege violations of the following statutes: Count III: New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1; Count IV: Arizona Consumer Fraud Statute, A.R.S. §§ 44-1521; Count V: California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750; Count VI: California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; Count VII: Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101; Count VIII: Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201; Count IX: Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505; Count X: Maryland Consumer Protection Act, Md. Code, Com. Law §§ 13-101; Count XI: Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901; Count XII: Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0903; Count XIII: North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1; and Count XIV: Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Tit. 73, §§ 201-1.

differences between "reasonable" rates and rates paid by members of the putative class. (*Id.* ¶¶ 89–127).

**B. Procedural Background**

Plaintiffs initially filed their complaint (D.E. No. 1, Complaint) on March 8, 2017. In the original complaint, Plaintiffs asserted claims under the consumer protection statutes of nine states and common law claims for breach of contract, unjust enrichment, and fraud. (*See* D.E. No. 29, Opinion Dismissing Plaintiffs' Complaint ("Opinion") at 3). Quest moved to dismiss (D.E. No. 11), and the Court granted the motion on March 29, 2018 with leave to replead.

In the Opinion, the Court first found that Plaintiffs failed to state a claim for their state-law claims under both a "differential or high pricing" theory and a "deceptive billing" theory. (Opinion at 6–11). As to the first theory, the Court found that allegations of differential or high pricing, by themselves, did not constitute unfair or deceptive trade practices. (*Id.* at 6–7). The Court further found that Plaintiffs' "deceptive billing" theory failed because the allegations of Quest's failure to advise patients of lower third-party negotiated rates were insufficient to state a claim under the consumer protection statutes, and Plaintiffs did not allege any misrepresentation related to Quest's billing practices. (*Id.* at 8–11). Relying on this analysis, the Court further dismissed Plaintiffs' common law fraud claim. (*Id.* at 11).

As to the contract claims, the Court found that Plaintiffs had failed to allege any contract—implied or otherwise—which would entitle Plaintiffs to be billed at "the reasonable fair market value of Quest's services." (*Id.* at 11–12). The Court further found that Plaintiffs had failed to state a claim for *quantum meruit* because, assuming *arguendo* that an implied contract governed the relationship between the parties, Quest—not Plaintiffs—was the performing party that would be entitled to bring such a claim. (*Id.*). The Court further noted that such a claim also failed

because a claim of unreasonableness based only on differences between chargemaster and negotiated rates was insufficient. (*Id.* at 11–14). Finally, because Plaintiffs' unjust enrichment claim was virtually identical to their *quantum meruit* claim, the Court dismissed that claim as well. (*Id.* at 14).

Plaintiffs subsequently filed the operative Amended Complaint. The Amended Complaint contains additional named plaintiffs who bring their claims on behalf of "all Quest patients in the United States who, without any express contract with Quest that establishes the amount of fees to be paid to Quest, were charged fees for clinical lab testing services performed by Quest that were in excess of the reasonable market rates for the same services." (Am. Compl. ¶ 2). Asserting the two theories described above, the Amended Complaint contains new allegations regarding Quest's business structure and finances and the differential pricing it charges to third-party payers and Plaintiffs. (*Id.*). Quest once again moved to dismiss. (D.E. No. 34).

In its Memorandum of Law in Support of the Motion, Quest principally argues that, despite the opportunity to amend, Plaintiffs fail to correct the deficiencies of the original complaint requiring dismissal once again—this time with prejudice. (D.E. No. 34-1 ("Def. Mov. Br.") at 1). Specifically, Quest argues that Plaintiffs fail to state a claim for breach of implied contract because Quest never agreed to charge Plaintiffs the negotiated third-party rates, nor did it "omit" the price term such that the term should be supplied by the Court. (*Id.* at 4–9). Quest further argues that Plaintiffs fail to demonstrate that the chargemaster rates are unreasonable. (*Id.* at 10). According to Quest, these defects require dismissal of Plaintiffs' implied contract claims. (*Id.* at 10–11).

As to the state consumer protection claims, Quest argues that little has changed between Plaintiffs' initial complaint and the operative Amended Complaint, and, as a result, the consumer protection claims fail for the same reasons articulated by the Court in its March 29, 2018 Opinion.

(*Id.* at 12–13). Specifically, Quest argues that Plaintiffs improperly request that the Court set "reasonable" rates for the services performed by Quest when such rate setting, if appropriate at all, is properly performed by the legislature or regulators. (*Id.* at 14–19). Quest also argues that the "learned professional rule" forecloses certain consumer fraud claims, and that Plaintiffs' claim for deceptive billing practices fails for the same reasons that claim was previously dismissed by the Court. (*Id.* at 20–23).

Plaintiffs dedicate much of their opposition brief to Quest's arguments for dismissal of the implied contract claims. In sum, Plaintiffs argue that they sufficiently allege (i) that the parties never agreed on a price for the provided laboratory services; (ii) Plaintiffs are thus only required to pay a "reasonable market rate"; (iii) Quest's chargemaster rates are "unreasonable"; and (iv) Plaintiffs are entitled to the difference between the "reasonable market rate" and the "unreasonable" billed amount. (Pl. Opp. Br. at 6–25). Separately, Plaintiffs argue that they have corrected the pleading deficiencies related to their state consumer protection claims and list for the Court authorities upon which they rely for that proposition. (*Id.* at 26–30).

In its reply, Quest reiterates its opposition to Plaintiffs' "missing price term" implied contract theory. (D.E. No. 41 ("Def. Reply Br.")). Quest argues that when Plaintiffs sought and accepted Quest's services, they agreed to the prices defined in the chargemaster at the then-existing rates. (*Id.* at 3–4). Quest further points out that the Amended Complaint does not allege that Plaintiffs were denied information relating to the chargemaster rates, but rather that they sought out Quest's services, received those services, and were later displeased with the price. (*Id.* at 4). Quest then argues that Plaintiffs fail to demonstrate that Quest's prices are unreasonable and fail to address the other deficiencies highlighted by the Court in its March 29, 2018 Opinion related to Plaintiffs' consumer protection claims. (*Id.* at 6 & 10–12).

## II. Legal Standard

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citation and internal quotation marks omitted). But the court need not accept "legal conclusions" as true. *See Iqbal*, 556 U.S. at 678. And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Finally, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement for allegations of fraud or mistake. *See Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 13-6272, 2015 WL 7871165, at *2-3 (D.N.J. Dec. 4, 2015). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff may satisfy Rule 9(b) by pleading the "date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations

of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (citation and internal quotation marks omitted); *see also United States v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016) ("In order to satisfy Rule 9(b), a complaint must provide all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.") (citations and internal quotation marks omitted).

## III. Discussion

### A. The State Law Consumer Protection Claims

As this Court has previously observed, to state a cause of action under the consumer protection statutes alleged in the Amended Complaint, a plaintiff must show, at least (i) a deceptive or unfair business practice (ii) that caused (iii) actual loss or damage to the consumer. *Cisner v. Nestlie Waters N. Am. Ins. Inc.*, 596 F. App'x 157, 160 (3d Cir. 2015) (citation omitted); (*see also* Opinion at 5 (collecting cases)).

As an initial matter, Quest argues that Plaintiffs' claims under the New Jersey and North Carolina consumer protection statutes are foreclosed by the "learned professional" rule. (Def. Mov. Br. At 20–22). The Court agrees. Quest, like hospitals and ambulance service providers, qualifies as a learned professional covered by other state regulation rendering a claim under the New Jersey or North Carolina consumer protection statutes incognizable. *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 268 (3d Cir. 2008); *Atlantic Ambulance Corporation v. Cullum*, 166 A.3d 260, 265 (N.J. Super. Ct. App. Div. 2017) (collecting cases); *Shelton v. Duke Univ. Health Sys., Inc.*, 633 S.E.2d 113, 117 (N.C. Ct. App. 2006). Counts III and XIII are thus DISMISSED.

As to the remaining consumer protection claims, Plaintiffs argue that they have stated a claim for unfair or deceptive trade practices because they have heeded this Court's directive that they "may be able to state consumer-fraud claims based on excessive pricing if they address other

factors relevant to whether Quest's pricing is deceptive or fraudulent." (Pl. Opp. Br. at 7 (citations omitted)). Plaintiffs argue that they have added additional allegations which demonstrate the prices Quest charged Plaintiffs are unfair or unreasonable. While discovery may reveal factual matter which renders Plaintiffs' claims unable to survive summary judgment, taking the allegations in the Amended Complaint as true, as the Court must at this stage, the Court finds that Plaintiffs allege sufficient facts to support their theory of unfair trade practices based on excessive pricing. Plaintiffs allege that the prices billed by Quest were 500% to 1000% more than the prices paid by 99% of Quest's customers. (Am. Compl. ¶¶ 5 & 377–381). Plaintiffs further allege that the costs billed to them have no relationship to the actual cost incurred by Quest, and that these amounts are "substantially above the rates customarily received by other similarly situated lab companies for similar services." (*See, e.g.*, *id.* ¶¶ 5 & 8–9). In sum, Plaintiffs allege that Quest's chargemaster prices are unreasonable, unfair, or excessive based on Quest's internal cost structure, the usual and customary rates charged, and payments received for these services by both Quest and other laboratory testing services. *Colomar v. Mercy Hosp., Inc.*, 461 F. Supp. 2d 1265, 1273 (S.D. Fla. 2006) (denying motion to dismiss claims under, *inter alia*, Florida's consumer protection statute). As to these remaining claims based on a theory of excessive pricing, the motion to dismiss is DENIED**.**

However, to the extent Plaintiffs pursue their consumer protection claims based on deceptive or fraudulent billing practices, those claims are DISMISSED for the same reasons stated in the Court's March 29, 2018 Opinion. (*See* Opinion at 9–10). Plaintiffs have again failed to plead these fraud-based claims with the requisite particularity, and the Court is unwilling to find that providing an un-itemized bill or sending follow up notices for unpaid medical bills amounts

to a fraudulent or deceptive trade practice. *Berger v. Hahnemann Univ. Hosp.*, No. CV 17-2295, 2017 WL 5570340, at *5 (E.D. Pa. Nov. 17, 2017), *aff'd*, 765 F. App'x 699 (3d Cir. 2019).

### B. The Implied Contract Claims

To state a claim for breach of contract, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot,* 507 F.3d 188, 203 (3d Cir. 2007) (citation omitted). Contracts traditionally fall into three categories: express, implied-in-fact, or implied-in-law. *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 677 A.2d 747, 752 (N.J. 1996) (citations omitted). "The contract is express if the agreement is manifested by written or spoken words[] and implied-in-fact if the agreement is manifested by other conduct." *Id.* (citations omitted). There is no legal difference between express or implied-in-fact contracts; the two differ only based on the way the contracting parties formed mutual assent. *Id.*; *see also Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 534 (E.D. Pa. 2011) (noting implied-in-fact contract may arise to recover billed amount for medical services). Thus, "[a]n implied-in-fact contract is a true contract arising from mutual agreement and intent to promise . . . ." *Matter of Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987).

The third type, a "contract implied-in-law" or "quasi-contract," is "a bird of another feather." *Wanaque*, 677 A.2d at 752. In contrast to express and in-fact contracts, a quasi-contract is no contract at all because it lacks actual manifestation of assent between the parties—what is traditionally referred to as "the meeting of the minds." *Id.* Instead, it is a legal fiction created "for the purpose of bringing about justice without reference to the intention of the parties." *St. Paul Fire & Marine Ins. Co. v. Indem. Ins. Co. of N. Am.*, 158 A.2d 825, 827 (N.J. 1960) (quoting 1 WILLISTON, CONTRACTS 3A (1957)). The concept of a quasi-contract "rest[s] on the equitable

principle that a person shall not be allowed to enrich himself unjustly at the expense of another . . . . " *Id.* (citation omitted).

"[W]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction[,] and [the Court] must enforce those terms as written." *Sheet Metal Workers Local No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (quoting *Kutzin v. Pirnie*, 591 A.2d 932, 936 (N.J. 1991)). While a contract "must be sufficiently definite so that the performance to be rendered by each party can be ascertained with reasonable certainty," *Baer v. Chase*, 392 F.3d 609, 618–19 (3d Cir. 2004) (citations and internal quotations omitted), properly formed express or implied-in-fact contracts may have missing essential terms. According to the Restatement, "[w]hen the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." RESTATEMENT (SECOND) OF CONTRACTS § 204 (1981); *see also Pacifico v. Pacifico*, 920 A.2d 73, 78 (N.J. 2007).

In the Amended Complaint, Plaintiffs argue two contract theories: that the parties' relationship is governed by an implied-in-fact contract with a missing price term and, in the alternative, that that Quest is liable to Plaintiffs under a quasi-contract theory. The Court addresses each in turn.

### 1. Breach of an Implied-in-Fact Contract

Quest argues that Plaintiffs fail to state a claim for breach of implied-in-fact contract because they do not allege "that the contract between the parties included an agreement to charge uninsured patients the same rates as insured patients." (Def. Mov. Br. at 5). But Quest's argument misreads the allegations in the Amended Complaint. Plaintiffs do not allege that the parties entered into an explicit agreement regarding the cost of Quest's services. (Am. Compl. ¶¶ 12 & 13).

Instead, Plaintiffs state that they (individually or through their physicians) requested laboratory testing services, and Quest provided those services. According to the Amended Complaint, it was only after the requested services were completed that price was mentioned at all. (*Id.*)

Quest argues forcefully that Plaintiffs' theory based on a "missing" price term has not only been rejected by the Third Circuit, but also by other federal and state courts, each of which concluded that the "chargemaster" rates were incorporated into the parties' service agreement and were thus properly passed on to un- or under-insured Plaintiffs. (Def. Mov. Br. at 7–10) (citing, *e.g.*, *DiCarlo*, 530 F.3d at 264 (analyzing parties' written contract and holding "in the context of this case, the price term was not in fact open, and that 'all charges' unambiguously can only refer to St. Mary's uniform charges set forth in its Chargemaster")).

However, these cases differ from the allegations in the Amended Complaint in a significant way: in each the plaintiffs signed a written contract agreeing that they would be responsible for the charges associated with their care—set forth as, for example, "all charges," "regular rates," or "usual and customary charges." *DiCarlo*, 530 F.3d at 264 (written contract in which patient agreed to pay "all charges"); *Limberg v. Sanford Med. Ctr. Fargo*, 881 N.W.2d 658, 662 (N.D. 2016) (same); *Firelands Reg'l Med. Ctr. v. Jeavons*, No. E-07-068, 2008 WL 4408600, at *3 (Ohio Ct. App. 2008) (same); *Morrell v. Wellstar Health Sys., Inc.*, 633 S.E.2d 68, 72 ( Ga. Ct. App. 2006) (same); *Banner Health v. Med. Sav. Ins. Co.*, 163 P.3d 1096, 1100 (Ariz. Ct. App. 2007) (written contract for "usual and customary charges"); *Doe v. HCA Health Servs. of Tennessee, Inc.*, 46 S.W.3d 191, 194 (Tenn. 2001) (written contract for "total charges"); *Quinn v. BJC Health Sys.*, 364 F. Supp. 2d 1046, 1053 (E.D. Mo. 2005) (written contract "guaranteeing payment in full for medical care"); *Allen v. Clarian Health Partners, Inc.*, 980 N.E.2d 306, 309 (Ind. 2012) (written contract for "payment of the account"); *Holland v. Trinity Health Care Corp.*, 791 N.W.2d 724,

728 (Mich. Ct. App. 2010) (written contract for "usual and customary charges"); *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184, 191–93 (S.D. 2007) (written contract for "unspecified and undiscounted charges"); *Woodruff v. Fort Sanders Sevier Med. Ctr.*, No. E2007-00727-COA-R3CV, 2008 WL 148951, at *3 (Tenn. Ct. App. Jan. 16, 2008) (written contract for "facility's rates and terms"); *Shelton v. Duke Univ. Health Sys., Inc.*, 633 S.E.2d 113, 116 (N.C. Ct. App. 2006) (written contract for "regular rates and terms"). Thus, the courts in this line of cases found that, while the actual charges eventually billed to the plaintiffs were not specifically set forth in the agreement, the parties had a written agreement which sufficiently specified the price of the services. In other words, the courts concluded that there was no missing price term and thus enforced the parties' agreements as written.

Here, the Amended Complaint contains no allegations that Plaintiffs had any similar written agreement with Quest, and Quest does not argue that the amounts billed to Plaintiffs are based on any written agreement. (*See generally*, Def. Mov. Br.). *DiCarlo* and the other authorities in this line of cases are thus distinguishable from Plaintiffs' allegations here, and the Court rejects Quest's request to dismiss Counts I and II on this basis. *See E. Coast Advanced Plastic Surgery v. Aetna, Inc.*, No. 17-13676, 2018 WL 3062907, at *3 (D.N.J. June 21, 2018) (denying motion to dismiss breach of implied-in-fact contract claim); *Colomar*, 461 F. Supp. 2d at 1273 (same); *Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1068 (10th Cir. 2019) (reversing dismissal of declaratory judgment claim regarding an implied-in-fact contract). Rather, the Court finds the Amended Complaint sufficiently alleges an implied-in-fact contract with a missing term: price.

Quest next argues that even if Plaintiff sufficiently alleges an implied-in-fact contract, Plaintiffs fail to demonstrate that the prices charged by Quest were unreasonable. Plaintiffs respond that they sufficiently allege that Quest's prices are unfair and unreasonable, and that this

Court should supply a "reasonable" price based on the Restatement's observation that, if a contract contains a missing term, the Court should supply a reasonable term.[4]

The Court has already determined that Plaintiffs sufficiently allege, at least at this stage, that Quest's prices are unreasonable. Thus, taking the allegations as true in the light most favorable to Plaintiffs, Plaintiffs sufficiently allege that Quest's chargemaster prices are unreasonable based on Quest's internal cost structure, the usual and customary rates charged, and payments received for these services by both Quest and other laboratory testing services. *Colomar*, 461 F. Supp. 2d at 1274 (denying motion to dismiss claims for "breach of contract for unreasonable pricing of an open pricing term in her contract with [the hospital]" and under Florida's consumer protection statute); *Scarlett*, 922 F.3d at 1068 (reversing dismissal of declaratory judgment claim for an alleged implied-in-fact contract based on a missing price term for air-lift ambulance services). Accordingly, the motion to dismiss Plaintiffs' claims for breach of implied contract-in-fact and declaratory judgment regarding that implied contract is DENIED.

### 2. Breach of an Implied-in-Law Contract

In the alternative, Plaintiffs allege a cause of action for a breach of contract implied-in-law under either a theory of *quantum meruit* or unjust enrichment. *Quantum meruit* is a quasi-contractual remedy under which a court creates an implied-in-law contract premised on the theory of unjust enrichment. *See Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 998–99 (3d

---

[4] While a novel theory, in this Court's view, it is questionable whether a court may appropriately supply an essential price term. Under New Jersey law, an agreement is unenforceable when the parties do not agree to one or more essential terms. *Pacifico*, 920 A.2d at 78 (citing Restatement (Second) of Contracts § 204 (1981)). Price is generally considered an essential term because it is of "the utmost importance [and is] basic and necessary to the parties' agreement." *Rauch v. Rauch*, A-4745-14T4, 2017 WL 3722545, at *5–6 (N.J. Super. Ct. App. Div. Aug. 30, 2017) (internal quotations and citation omitted); *MDC Inv. Property, L.L.C. v. Marando*, 44 F. Supp. 2d 693, 698–699 (D.N.J. 1999) (citing *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 287 (N.J. 1992)). The Court also notes that supplying a reasonable term under Section 204 "is intended to be applied in cases in which the parties failed to agree regarding an issue, generally because they did not anticipate that it would arise or merely overlooked it." *Pacifico*, 920 A.2d at 78; *Rauch*, 2017 WL 3722545, at *6. However, because Quest does not challenge the allegations in the Amended Complaint on this basis, the Court need not address this issue.

Cir. 1987). "To recover under a theory of quantum meruit, a plaintiff must establish (1) the performance of services in good faith; (2) the acceptance of the services by the entity to which they were rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services. *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, 329 F. Supp. 3d 56, 76 (D.N.J. 2018) (citing *Coldwell Banker Commercial/Feist & Feist Realty Corp. v. Blancke P.W. L.L.C.*, 846 A.2d 633, 645 (N.J. Super. Ct. App. Div. 2004)).

The Amended Complaint does not explicitly allege a claim for *quantum meruit*; however, Quest argues in the Motion that Plaintiffs fail to state this claim. To the extent the Amended Complaint alleges a cause of action for *quantum meruit* the Court dismisses that claim for the same reasons articulated in the Court's March 29, 2018 Opinion: Plaintiffs are not the performing party to any alleged quasi-contract entitling them to assert that claim. (Opinion at 13–14).

As to unjust enrichment, under New Jersey law, to allege a claim for unjust enrichment, "a party must demonstrate that the opposing party 'received a benefit and that retention of that benefit without payment would be unjust.'" *Thieme v. Aucoin–Thieme*, 151 A.3d 545, 557 (N.J. 2016) (quoting *Iliadis v. Wal–Mart Stores, Inc*., 922 A.2d 710, 723 (N.J. 2007)). This doctrine of quasi-contract also requires that a plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant, and that the failure of remuneration enriched defendant beyond its contractual rights. *Id.* (quoting *Iliadis*, 922 A.2d at 723). Plaintiffs allege that the members of the Payor-Subclass were charged and paid the chargemaster rates, and that Quest's retention of that amount is unjust. (Am. Compl. ¶ 412). But Plaintiffs do not sufficiently plead the elements of unjust enrichment as required under New Jersey law. Plaintiffs provided no benefit to Quest in exchange for the expectation of remuneration from Quest—in fact, Plaintiff pleads the opposite. The Court finds that Plaintiffs do not state a claim for unjust enrichment or

*quantum meruit*, and Quest's motion to dismiss the claim for breach of contract implied-in-law is GRANTED.

## IV. Dismissal with Prejudice

Quest requests dismissal with prejudice. "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)). Leave is properly denied in cases of "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.* (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962). Here, amendment of Counts III and XIII would be futile as claims under the New Jersey and North Carolina consumer protection laws are impermissible under the "learned professional" rule. Accordingly, those claims are DISMISSED *with prejudice*. For the other claims dismissed by way of this Opinion, because leave must be "freely given" absent a showing of, *inter alia*, bad faith, repeated failures to address pleading deficiencies, undue prejudice, or futility, those claims are DISMISSED *without prejudice.*

## V. Conclusion

While the Court recognizes the Third Circuit's reluctance to wade into the morass of the costs of health care in the United States that Quest highlights, the Court reads Plaintiffs' claims here not as a generalized challenge to public policy issues of affordability of health care better left to the legislature, but rather as claims sounding in unfair business practices and breach of contract allegedly undertaken by Quest. *See DiCarlo*, 530 F.3d at 364; *Cullum*, 166 A.3d at 268–69.

Accordingly, for the reasons stated above, Quest's motion is GRANTED-in-part and DENIED-in-part.  An appropriate order follows.

*s/Esther Salas*  
**Esther Salas, U.S.D.J.**